UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEAN K. CONQUISTADOR,<br>        Plaintiff, | :<br>:<br>: |
| v. | :     CASE NO. 3:19-cv-430 (KAD) |
| ADAMAITIS,<br>        Defendant. | :<br>:<br>: |

**MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 107]**

Kari A. Dooley, United States District Judge

On July 2, 2018, the plaintiff, Jean K. Conquistador ("Conquistador"), while incarcerated as a pretrial detainee at Hartford Correctional Center ("HCC"), was assaulted in his cell by another inmate. Thereafter, on March 22, 2019, Conquistador commenced this civil rights action in which he alleges that the defendant, Lieutenant Adamaitis ("Adamaitis"), failed to protect him from the assault (a Fourteenth Amendment claim) and did so with a retaliatory purpose (a First Amendment claim). Pending before the Court is the defendant's motion for summary judgment. Therein, Adamaitis asserts that Conquistador's claims fail as a matter of law and alternatively that he is protected by qualified immunity. For the following reasons, the motion is GRANTED.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at

113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc*., 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**[1]

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains

2

The Court notes preliminarily that, for purposes of the motion for summary judgment only, the majority of the facts relating to the Fourteenth Amendment claim are not in dispute. The defendant's argument accepts as true Conquistador's allegations regarding the events leading up to the assault, even though defendant Adamaitis, as a factual matter, contests the accuracy of those allegations. *See* Def's Mem., Doc. 107-1 at 13 (arguing that Conquistador fails to allege a cognizable claim "even by the plaintiff's version of events as recited at his deposition").

On July 2, 2018 and July 3, 2018, Conquistador was a pretrial detainee incarcerated at Hartford Correctional Center ("HCC"). Def.'s Local Rule 56(a)1 Statement, Doc. No. 107-2, ¶ 1. Defendant Adamaitis was a correctional lieutenant assigned to HCC in July 2018. *Id.* ¶ 3. On July 2, 2018, Conquistador was housed in the 1-West housing unit. *Id.* ¶ 4. He had been confined there for at least a week prior to July 2, 2018. *Id.*

Correctional officers at HCC work on three shifts with the second shift being from 3:15 p.m. until 12:23 a.m. *Id.* ¶ 7. A correctional officer is posted in unit 1-West during each shift and that officer tours the unit every thirty minutes. *Id.* ¶ 5. In addition, correctional supervisors tour unit 1-West twice during each shift. *Id.* ¶ 6. During the tour, the officer walks through the unit visually inspecting the unit, cells, and inmates and addresses any issues with the inmates in the unit. *Id.* ¶ 8. After each tour, the officer who made the tour makes an entry in the unit

---

separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

The defendant informed Conquistador of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, Doc. No. 107-3. Although Conquistador has filed a Local Rule 56(a)2 Statement, he has not included a citation to admissible evidence to support most of his denials. Accordingly, any statements in the defendant's Local Rule 56(a)1 Statement for which the denial does not include the required citation is deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

3

logbook noting the officer who toured the unit, the time of the tour, and any issues or incidents occurring on the tour.  *Id.* ¶¶ 9-10.

The inmates in the cells near Conquistador were the same as on the previous day; he was not aware of any new inmates moving into the unit.  *Id.* ¶ 11.  On July 2, 2018, Conquistador interacted with the other inmates in the unit outside of his cell at breakfast, morning recreation, lunch, and afternoon recreation.  *Id.* ¶ 12.  From 1:30 p.m. to 3:00 p.m., Conquistador attended afternoon recreation without issue with the inmate who assaulted him later in the afternoon.  *Id.* ¶ 13.  Conquistador had no prior history with the inmate who assaulted him on July 2, 2018; there was no prior hostility or issues between them.  *Id.* ¶ 14.

Conquistador was in his cell following afternoon recreation on July 2, 2018 when he heard two inmates threaten him, an inmate with a beard housed in the next cell and an inmate housed across the corridor.  *Id.* ¶ 15.  Conquistador heard the inmate with the beard say, "we're going up in that cell."  *Id.* ¶ 16.  Conquistador understood this statement to mean that the inmate would come into his cell and assault him.  *Id.*  After the inmate with the beard made that statement, the inmate in the cell across the corridor said, "say no more."  *Id.* ¶ 17.  This was the only threat Conquistador received.  *Id.* ¶ 18.  Conquistador did not know who these inmates were and did not know if they were associated with a security risk group.  *Id.* ¶ 19.

A few minutes after Conquistador heard the threat, Lieutenant Adamaitis toured the unit with Officer Jenkins.  *Id.* ¶ 21.  Conquistador stopped them outside his cell.  *Id.*  Conquistador asked to be moved to another housing unit.  *Id.* ¶ 22.  When Lieutenant Adamaitis asked why, Conquistador stated that he had been threatened by other inmates and, if he were not moved, "something would happen to [him]."  *Id.*  Conquistador did not identify the inmates who had

4

threatened him. *Id.* Lieutenant Adamaitis stated, "we're all men here," and walked away. *Id.* The exchange lasted less than a minute. *Id.* ¶ 23.

Lieutenant Adamaitis completed his tour of the unit at 4:28 p.m.[2] *Id.* ¶ 24. At 4:30 p.m., just a few minutes later, Officer Hammond, the officer assigned to 1-West, toured the unit and did not note any issues. *Id.* ¶ 25.

At about 4:50 p.m. the cell doors were opened to allow inmates to go to dinner. *Id.* ¶ 26. As Conquistador was leaving his cell, the inmate from across the corridor entered Conquistador's cell and began assaulting him. *Id.* ¶ 27. Conquistador identified his assailant as the inmate who had stated, "say no more." *Id.* ¶ 28. The bearded inmate was acting as lookout. *Id.*

Officer Jenkins called a code and multiple officers, including Lieutenant Adamaitis and medical staff responded. *Id.* ¶ 29. While staff was responding, Conquistador pushed the inmate out of his cell. *Id.* ¶ 30. After Conquistador and the other inmate were secured, Conquistador was provided medical treatment at the cell and then taken to the medical unit. *Id.* ¶ 31.

When he was cleared by the medical unit, Conquistador was taken to restrictive housing pending an investigation into the incident. *Id.* ¶ 32. After less than one hour, Conquistador was released to general population. *Id.* ¶ 33. He did not receive a disciplinary report or any sanctions as a result of the incident. *Id.* A review of the incident showed that Conquistador was the victim of the assault. *Id.* ¶ 36. The other inmate received disciplinary charges for assault. *Id.* ¶ 37. That evening, Conquistador reported feeling suicidal and was moved from general population to

---

[2] Conquistador asserts that the threat occurred no more than fifteen minutes before the assault and that he spoke with Lieutenant Adamaitis after the threat and before the assault. This assertion contradicts the logbook evidence that Lieutenant Adamaitis concluded his tour of the unit at 4:28 p.m., twenty-six minutes before the assault at 4:54 p.m. This contradiction does not affect the analysis of Conquistador's claims, however, as Lieutenant Adamaitis concedes, for purposes of the motion for summary judgment that Conquistador reported the threat before the assault occurred.

5

behavior observation status overnight.  *Id.* ¶ 38.

Conquistador alleges that, on the morning of July 3, 2018, after being released from behavior observation status, he encountered Lieutenant Adamaitis while walking in the corridors unaccompanied and unrestrained.  *Id.* ¶ 39.  Conquistador alleges that he asked Lieutenant Adamaitis why he had not moved him the day before and Lieutenant Adamaitis responded that staff did not like Conquistador because he filed lawsuits.  *Id.*  This conversation allegedly occurred between breakfast and lunch on July 3, 2018, approximately between 9:00 a.m. and 10:00 a.m.  *Id.* ¶ 40.  No other person was present.  *Id.*

Lieutenant Adamaitis was not working on the morning of July 3, 2018.  *Id.* ¶ 41.  He did not arrive at HCC until 3:15 p.m., the start of second shift.  *Id.*  Lieutenant Adamaitis did not work on July 4, 5, or 6, 2018.  *Id.* ¶ 42.  Other than the alleged July 3, 2018 conversation, Lieutenant Adamaitis had no other conversations with Conquistador after the assault.[3]  *Id.* ¶ 44.

Before the July 2, 2018 incident, Conquistador had never filed a lawsuit against Lieutenant Adamaitis and Lieutenant Adamaitis did not know whether Conquistador had ever filed a lawsuit against correctional officials.  *Id.* ¶¶ 45-46.  Lieutenant Adamaitis further denies that this conversation ever occurred.  Def.'s Mem. Ex. B, Decl. of Adamaitis, Doc. No. 107-5, ¶ 23.

**Discussion**

---

[3] Conquistador denies this statement and refers the court to pages from his deposition transcript.  Those pages, however, refer to statements Conquistador made to Lieutenant Adamaitis over a week before the assault.  *See* Def.'s Mem. Ex. F.. Doc. No. 107-9 at 16-19.  Conquistador also stated in his deposition that he spoke to Lieutenant Adamaitis only three times, on July 2, 2018, July 3, 2018, and a week before the incident.  *Id.*, Doc. No. 107-9 at 69-70.

6

There are two claims against Lieutenant Adamaitis, a Fourteenth Amendment failure to protect claim based on his failure to move Conquistador when Conquistador reported the threat, and a First Amendment retaliation claim based on Lieutenant Adamaitis' alleged statement that he did not move Conquistador because he files lawsuits.

**Failure to Protect**

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A claim that a correctional officer failed to protect an inmate from attack rises to the level of a constitutional violation only when the officer acted with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* at 828.

Failure to protect claims of pretrial detainees are considered under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of pretrial detainees are considered under the Fourteenth Amendment while claims of sentenced prisoners are considered under the Eighth Amendment). To prevail on his claim, the pretrial detainee must show that, objectively, the challenged condition (here, the threat of harm at the hands of another inmate) was sufficiently serious to implicate a deprivation of the right to due process and that the officer "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligence is insufficient to

7

satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

The officer's conduct is judged under a standard of objective reasonableness, which is determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Thus, a showing after the fact that the wiser course may have been to move the inmate to another housing unit does not demonstrate deliberate indifference. *Shell v. Brun*, 585 F. Supp. 2d 465, 470 (W.D.N.Y. 2008).

As to the first component – the seriousness of the condition, the Supreme Court has not specifically identified those circumstances where a risk of inmate-on-inmate violence rises to the level of a constitutional deprivation. *Farmer*, 511 U.S. at 834 n.3. However, courts have found sufficiently serious conditions where correctional officers simply stand by and allow an inmate-on-inmate attack to proceed, *Davidson v. Cannon*, 474 U.S. 344, 348 (1966), or where inmates are housed together even though correctional officers know of prior hostility or assaultive behavior between them. *Villante v. Department of Corr.*, 786 F.2d 516, 523 (2d Cir. 1986). *See also Kramer v. Department of Corr.* No. 3:15-cv-251(RNC), 2019 WL 4805152, at *3-4 (D. Conn. Sept. 30, 2019) (citing *George v. Burton*, No. 00 Civ. 143 (NRB), 2001 WL 12010, at *3 (S.D.N.Y. Jan. 4, 2001) (collecting cases)), *aff'd,* 828 F. App'x 78 (2d Cir. 2020). Neither of these situations are present in this case. Lieutenant Adamaitis was not present during the attack and Conquistador confirms that there was no prior hostility between Conquistador and his attacker. Indeed, the Court has not located any case in which a vague threat by an unidentified actor was found to have created a condition sufficiently serious so as to implicate due process

8

concerns. Thus, Conquistador has not demonstrated that he was housed under sufficiently serious conditions so as to implicate the Fourteenth Amendment or that a genuine issue of material fact exists as to this issue.

Nor is there a genuine issue of material fact as to whether Adamaitis acted with the requisite mens rea. Cases finding liability under similar circumstances, generally involve clear and specific threats against the inmate. *See Velez v. City of New York*, No. 1:17-cv-9871-GHW, 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019), *appeal dismissed*, No. 19-2740 (2d Cir. Oct. 17, 2019) (citing cases). Conquistador did not identify the inmates who had threatened him, specify the threat, or indicate when the alleged attack would occur. He had been in the unit for over a week without incident. In fact, he had attended recreation with the inmate who attacked him a few hours before. Conquistador conceded at his deposition that that attack "came out of nowhere." Def.'s Mem. Ex. F, Doc. No. 107-9 at 34 ll.24-25 & 35 l.1. The unit officer toured the housing unit before the assault and shortly after Lieutenant Adamaitis, but Conquistador expressed no fears of assault to him. Conquistador fails to present evidence sufficient to show that Lieutenant Adamaitis recklessly failed to act with reasonable care to mitigate the risk of harm to Conquistador.[4] While the assault on Conquistador was both reprehensible and unfortunate, it was not the result of a violation of his Fourteenth Amendment substantive due process rights.

For all of these reasons, the motion for summary judgment is granted as to the Fourteenth Amendment failure to protect claim. *See Kramer*, 2019 WL 4805152 at *4 (summary judgment warranted where inmate did not tell officer the attacker had made threats against him and there

---

[4] To the extent Conquistador asserts that Adamaitis acted intentionally, that claim is rejected for the reasons set forth in the discussion of Conquistador's First Amendment retaliation claim.

was no evidence that assailant had previously attacked others or displayed hostility against the inmate).

**Qualified Immunity**

Even if the evidence was sufficient to raise a genuine issue of material fact as to the constitutional violation, Lieutenant Adamaitis is protected by qualified immunity. Qualified immunity may be invoked "when, even though plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the action complained of, it was nonetheless 'objectively reasonable' for the defendant official 'to believe that his acts did not violate those rights.'" *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995).

Qualified immunity would be denied to an official only if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The district court has discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

10

In considering whether a right is clearly established, the court must consider Supreme Court or Second Circuit cases and determine what a reasonable officer would understand in light of that law. *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014); *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("district court decisions—unlike those from the courts of appeal—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity"). The court considers whether a holding prohibits the conduct in question as well as whether decisions clearly foreshadow such a ruling. *Terebesi*, 764 F.3d at 231. Absent a "case of controlling authority" or "a consensus of cases of persuasive authority," the officers "cannot have been 'expected to predict the future course of constitutional law.'" *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (quoting *Procunier v. Navarette*, 434 U.S. 555, 562 (1978)).

The Court has not located any Supreme Court or Second Circuit precedent holding a correctional officer liable for failure to protect an inmate from harm where there is no evidence of a prior attack or hostility between the inmates and the plaintiff-inmate relates only a general threat and fear for safety without identifying the future assailant or time of the feared attack. Generally, a specific identifiable fear of assault is required to support a failure to protect claim. *See Liverpool v. Davis,* 442 F. Supp. 3d 714, 735 (S.D.N.Y. 2020) (noting that awareness of specific fear of assault is sufficient to defeat qualified immunity).

In *Liverpool*, the plaintiff informed the defendants that his cellmate was mixing a concoction including human waste and was going to throw it at other inmates. He asked to be removed from the cell and potential exposure to the mixture. 442 F. Supp. 3d at 731-32. The court found this information, which included the name of the inmate who would act and what he intended to do, was sufficient to deny summary judgment on qualified immunity grounds. *Id.* at

11

735.  In *Velez*, on the other hand, the inmate told the defendant that he did not feel safe in the holding cell but did not "go into details" or identify the inmate who made him feel unsafe, although he claimed to have referred to an inmate who was pacing.  2019 WL 3945642 at *1.  The court found that the officer was protected by qualified immunity because the inmate's "vague and unsubstantiated concerns about his safety … were not sufficient to make clear to a reasonable officer that preventative action was constitutionally required."  *Id.* at *4; *see also Rivera v. New York*, No. 96 Civ. 7697(RWS), 1999 WL 13240, at *9 (S.D.N.Y. Jan. 12, 1999) ("communicating vague concerns of future assault by unknown individuals not sufficient to impose liability").

Similarly, here, Conquistador did not identify the inmates who threatened him and there was no evidence of a history of violence between Conquistador and any other inmate in the unit.  In the absence of precedent finding liability under these circumstances, a reasonable officer would not have understood that his failure to act in response to the unspecified threat violated Conquistador's constitutional rights and Lieutenant Adamaitis would be protected by qualified immunity.

**Retaliation**

Conquistador's second claim is for retaliation.  He alleges that Lieutenant Adamaitis intentionally failed to move him to a different unit because he is litigious.  "[P]risoner retaliation claims are easily fabricated, and … pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration."  *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)) (internal quotation marks omitted); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996) (noting that prisoner retaliation

claims are "'prone to abuse' because prisoners can claim retaliation for every decision they dislike") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

To prevail on his retaliation claim, Conquistador must present evidence showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted)). The adverse action must be sufficiently serious to deter a similarly situated person of ordinary firmness from exercising his First Amendment right. *See id.* at 93-94.

Conquistador's protected activity is filing lawsuits. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial forum is protected activity). And at least in theory, the decision not to remove Conquistador from harm's way would be considered an adverse action on the part of Lieutenant Adamaitis. It is the third requisite that Lieutenant Adamaitis argues is utterly lacking, i.e. the required causal connection between his litigation activity and Lieutenant Adamaitis' actions.

The Court first observes that temporal proximity between protected conduct and the adverse action can be circumstantial evidence of a retaliatory motive. *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017). As Conquistador presents no evidence regarding the timing of his litigation against correctional staff in relation to the events at issue, he has not established temporal proximity between his conduct and Lieutenant Adamaitis' actions. Even if he had, further evidence of a retaliatory animus is required to survive summary judgment. *Id; see Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) ("because prisoner retaliation claims are

13

easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations" (internal quotation marks and citation omitted)).

Moreover, Lieutenant Adamaitis states in his declaration that, prior to July 2, 2018, he was unaware that Conquistador had filed lawsuits against any correctional officials or staff. Def.'s Mem. Ex. B, Doc. No. 107-5 at 5 ¶ 21.  In opposition to this statement, and as the sole support for his retaliation claim, Conquistador cites a conversation he had with Lieutenant Adamaitis the morning after the attack during which Lieutenant Adamaitis allegedly admitted that he did not transfer Conquistador because Conquistador files lawsuits against correctional staff.  Conquistador described this conversation in detail at his deposition and confirmed that it was the conversation generally referenced in his complaint.  At his deposition, he was certain that the conversation occurred in the morning of July 3, 2018, between breakfast and lunch. Breakfast at HCC is served at 6:00 a.m. and lunch at 10:30 a.m.  Conquistador stated that he had just been released from Behavior Observation and was walking to his new housing unit unrestrained and unescorted when he met Lieutenant Adamaitis in the hallway.  No one was present at or observed the conversation.  Def.'s Mem. Ex. F, Doc. No. 107-9 at 63-68.  However, Lieutenant Adamaitis has submitted overwhelming evidence that the conversation could not have occurred as described by Conquistador because Lieutenant Adamaitis was not working in the morning of July 3, 2018.  Indeed, he was assigned to the second shift on July 3, 2018.  He further denies that the conversation ever occurred.

In opposition to the motion for summary judgment, Conquistador appears to concede that Lieutenant Adamaitis was not present in the correctional facility in the morning on July 3, and

14

merely asserts that the conversation occurred at some unspecified time and at some unspecified place. *See* Pl.'s Local Rule 56(a)2 Statement, Doc. No. 155-3, ¶ 42 ("TIMING DOES NOT MATTER. THE BOTTOM LINE IS THAT THE CONVERSATION WAS HAD"). Given Conquistador's deposition testimony, this is not sufficient to raise a genuine issue of material fact as to the causal connection between Conquistador's protected activity and Adamaitis' conduct. A party is bound by the facts he testifies to in a deposition and cannot defeat a motion for summary judgment by relying on a different version of events. *See Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues."); *see also Fisher v. Helt*, No. 3:03-cv-2183(RNC), 2006 WL 861006, at *5 n.6 (D. Conn. Mar. 30, 2006) ("a strong argument can be made that the plaintiff is bound by his deposition testimony and cannot avoid summary judgment by proffering a seemingly conflicting statement such as the one contained in his affidavit").

Lieutenant Adamaitis has presented sworn testimony that he was not aware of any lawsuits filed by Conquistador and that he was not in the correctional facility when the alleged admission that he was aware of such lawsuits was made. Conquistador cannot defeat summary judgment by asserting a new set of unsubstantiated allegations as to the timing and location of this purported admission.

In addition, courts have dismissed retaliation claims where the basis for the allegedly retaliatory conduct was complaints against other non-defendant correctional officials. *See, e.g., Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a

15

correctional officer where the only alleged basis for retaliation was a complaint about the conduct of another correctional officer); *Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *16 (N.D.N.Y. Dec. 11, 2018) ("retaliation is not 'reasonably inferred' where a plaintiff's complaint does not involve the defendant alleged to have retaliated against him"), *report and recommendation adopted*, 2019 WL 689234 (N.D.N.Y. Feb. 19, 2019), *aff'd in part, rev'd in part and remanded sub nom. Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020). Conquistador had not filed a lawsuit against Lieutenant Adamaitis prior to the incident underlying the complaint. And absent any (even minimally) reliable evidence of the purported conversation in which Adamaitis confessed his retaliatory motive, there is simply no basis to infer a retaliatory motive arising out of Conquistador's prior lawsuits against other correctional officers.

**Conclusion**

Defendant's motion for summary judgment [**Doc. No. 107**] is **GRANTED** for the reasons stated.

The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 3rd day of March 2021 at Bridgeport, Connecticut.

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　Kari A. Dooley
　　　　　　　　　　　　　　　　　　　　United States District Judge